UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

------------------------------x
                              :
CHERYL S. DAUMEN              :    Civil No. 1:17CV00514 (HBF)
                              :
v.                            :
                              :
NANCY A. BERRYHILL, ACTING    :
COMMISSIONER, SOCIAL SECURITY :
ADMINISTRATION                :
                              :
------------------------------x

## RULING ON CROSS MOTIONS

Plaintiff Cheryl S. Daumen brings this action pursuant to 42 U.S.C. §405(g), seeking review of a final decision of the Commissioner of Social Security which denied her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §401 et seq. ("the Act"). Plaintiff has moved to remand for further proceedings or remand for an award of benefits. The Commissioner has moved to affirm.

For the reasons set forth below, plaintiff's Motion for Judgment on the Pleadings **[Doc. #10]** is **GRANTED**. Defendant's Motion and Motion for Judgment on the Pleadings **[Doc. #12]** is **DENIED**.

I. **ADMINISTRATIVE PROCEEDINGS**

The procedural history of this case is not disputed. Plaintiff protectively filed an application for Title II Social Security Disability ("SSD") benefits on November 2, 2011,

1

alleging disability as of February 1, 2008. [Certified Transcript of the Record, Compiled on July 19, 2017, Doc. #5 (hereinafter "Tr.") 119; 123; 273-74]. Plaintiff alleged disability due to strokes, multiple sclerosis, headaches, cardiac impairment, Raynaud's syndrome, and antiphospholipid antibody syndrome. [Tr. 149]. Her Title II claim was denied on June 14, 2012. [Tr. 146-53]. Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ") on July 12, 2012. [Tr. 154-55].

On August 21, 2013, Administrative Law Judge ("ALJ") Robert T. Harvey held a hearing, at which plaintiff appeared with an attorney and testified. [Tr. 50-85]. Vocational Expert ("VE") David Festa also testified at the hearing. [Tr. 77-84]. On September 24, 2013, the ALJ found that plaintiff was not disabled, and denied her claim. [Tr. 120-37]. Plaintiff filed a timely request for review of the hearing decision on October 9, 2013. [Tr. 197-99].

On February 13, 2015, the Appeals Council vacated the hearing decision and remanded the case to ALJ Harvey. [Tr. 138-41]. The Appeals Council found that the decision did "not contain evaluations of the treating source opinions of Michael Ciere, O.D. contained in Exhibit 20F; and of Bianca Weinstock-Guttman, M.D., contained in Exhibit 23G." [Tr. 139]. "Comprehensive evaluations of these opinions, including

supporting rationale for the weight accorded to each, are required." Id.

On remand, the Appeals Council stated that the ALJ "will":

- If necessary, obtain additional evidence concerning the claimant's impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 C.F.R. 404.1512-1513). The additional evidence may include, if warranted and available, consultative physical and mental status examinations, and medical source statements about what the claimant can still do despite the impairments.

- Consider the treating source opinions pursuant to 20 CFR 404.1527 and Social Security Rulings 96-2 and 96-5p, and explain the weight given to such opinion evidence. As appropriate, the [ALJ] may request the treating source to provide additional evidence and/or further clarification of the opinion and medical source statement about what the claimant could still do despite the impairment through September 30, 2012 (20 CFR 404.1512). The [ALJ] may enlist the aid and cooperation of the claimant's representative in developing the evidence from the claimant's treating source.

- Further consider the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and Social Security Ruling 96-8p).

- If warranted, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base. Social Security Ruling 83-14.
    ...
[Tr. 139-40].

On July 2, 2015, a second hearing was conducted by ALJ Harvey, at which Ms. Duamen appeared with an attorney and

3

testified. [Tr. 86-112]. VE Dana Lessne also testified at the hearing. [Tr. 94-111]. On August 4, 2015, the ALJ found that plaintiff was not disabled, and denied her claim. [Tr. 31-49]. Plaintiff filed a timely request for review of the hearing decision on September 22, 2015. [Tr. 11-14]. On April 25, 2017, the Appeals Council denied her request for review, making the ALJ's decision the final determination of the Commissioner. [Tr. 1-7]. The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff, represented by counsel, timely filed this action for review and moves to remand the Commissioner's decision.

## II. STANDARD OF REVIEW

The review of a social security disability determination involves two levels of inquiry. First, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the Court must decide whether the determination is supported by substantial evidence. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence."). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alteration added) (citation omitted). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255,

260-61 (2d Cir. 1988) (citation omitted). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, Civil Action No. 3:13-CV-00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (internal citations omitted).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (citations and internal quotation marks omitted). "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013)(citations omitted).

**III. SSA LEGAL STANDARD**

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits.

To be considered disabled under the Act and therefore entitled to benefits, Ms. Daumen must demonstrate that she is

6

unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); see also 20 C.F.R. §404.1520(c)(requiring that the impairment "significantly limit[] ... physical or mental ability to do basic work activities" to be considered "severe").[1]

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §404.1520(a)(4). In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him

---

[1] DIB and SSI regulations cited herein are virtually identical. The parallel SSI regulations are found at 20 C.F.R. §416.901 et seq., corresponding to the last two digits of the DIB cites (e.g., 20 C.F.R. §404.1520 corresponds with 20 C.F.R. §416.920).

7

> disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given his residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003)); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). "Residual functional capacity" is what a person is still capable

8

of doing despite limitations resulting from his physical and mental impairments. See 20 C.F.R. §§404.1545(a), 416.945(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978) (citation omitted). "[E]ligibility for benefits is to be determined in light of the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied." Id. (citation and internal quotation marks omitted).

## IV. THE ALJ'S DECISION

Following the above-described five step evaluation process, ALJ Harvey concluded that plaintiff was not disabled under the Social Security Act. [Tr. 31-43]. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability, February 1, 2008.[2] [Tr. 36].

At step two, the ALJ found that plaintiff had multiple sclerosis, antiphospholipid syndrome with plasminogen activator inhibitor syndrome, left eye optic neuritis, discogenic lumbar

---

[2] Plaintiff's date last insured for Title II benefits is September 30, 2012. [Tr. 36].

spine, mitochondrial disorder, Raynaud's syndrome, and headaches, all severe impairments under the Act and regulations. Id.

At step three, the ALJ found that, through the date last insured, plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. [Tr. 36-37]. The ALJ specifically considered Listings 4.00 (cardiovascular impairment), 7.00 (hematological disorders) and 11.00 (neurological disorders). [Tr. 37].

Before moving on to step four, the ALJ found plaintiff had the RFC

> to perform light work as defined in 20 C.F.R. 404.1567(b) except the claimant has occasional limitations in bending, climbing, squatting, kneeling, balancing, crawling, has occasional limitations due to color blindness, cannot work in areas with unprotected heights, around heavy, moving or dangerous machinery, cannot climb ropes, ladders or scaffolds and cannot tolerate exposure to cold or excessive heat.

[Tr. 37].

At step four, the ALJ found plaintiff was capable of performing past relevant work as an elementary substitute teacher. [Tr. 42].

**V.   DISCUSSION**

  **A.   Title II Disability Benefit Period**

Ms. Daumen filed her Title II application on November 2,

2011, with an alleged an onset of disability date of February 1, 2008. Pursuant to 20 C.F.R. §404.621(a), a claimant "may receive [Title II SSD] benefits for up to 12 months immediately before the month in which [her] application is filed...." Further, under 20 C.F.R. §404.315(a)(4), entitlement to disability benefits begin once the claimant had "been disabled for 5 consecutive months." "Your waiting period can begin no earlier than the 17th month before the month you apply-no matter how long you were disabled before then." 20 C.F.R. §404.315(a)(4). Here, plaintiff asserts, and defendant does not dispute, that she is entitled to benefits from approximately May 2010 to the date last insured of September 30, 2012.[3] [Doc. #18 at 5]. Plaintiff correctly states that "[a]ny finding of disability prior to that date or beginning after the date last insured of September 30, 2012, would result in no payment of benefits and as such is moot." Id.

**B. The ALJ erred in failing to comply with the Appeals Council's Remand Order.**

The Court first addresses whether the ALJ committed reversible error by failing to comply with the Appeals Council's

---

[3] Plaintiff notes that "Dr. Weinstock-Guttman wrote (for the first time in her contemporaneous reports) on December 8, 2010 that, "I do not feel as though she is capable of sustainable employment at this point in time and should consider applying for social security disability.' On that date, she also began aggressive treatment of Ms. Daumen's multiple sclerosis with Copazone injections." [Doc. #18 n. 3].

11

February 13, 2015 Remand Order.

The regulations provide that on remand from the Appeals Council, "[t]he [ALJ] shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council remand order." 20 C.F.R. §404.977(b) (emphasis added). If an ALJ fails to comply with an Appeals Council remand order, their decision is subject to judicial review and can form the basis for a remand to the Commissioner. 42 U.S.C. §405(g).

On remand, ALJ Harvey addressed the opinions of treating neurologist Dr. Weinstock-Guttman and treating optometrist Michael Cieri. However, the Court finds that the ALJ failed to comply with the Appeals Council's specific instruction requiring a "[c]omprehensive evaluation of these opinions, including supporting rationale for the weight accorded to each..." and failed to "request the treating source to provide additional evidence and/or further clarification of the opinion and medical source statement about what the claimant could still do despite the impairment through September 30, 2012 (20 CFR 404.1512." [Tr. 139-140].

**Neurologist Dr. Weinstock-Guttman and Optometrist Dr. Cieri**

With respect to Dr. Weinstock-Guttman's opinion, the ALJ stated:

Per the Appeals Council remand, the undersigned has

12

> considered the medical source statement of Dr. Weinstock-Guttman in exhibit 23F, dated August 7, 2013. The medical source statement is almost one year after the claimant's date last insured, therefore little weight is given to this opinion. In exhibit 23F, entry of March 21, 2012, page 15, "patient on no medication for her disease or modifying disease therapy; the exam March 12, 2012, was within normal limits; exam of May 21, 2013, within normal limits, page 7, "there's no patient complaints of headache or fatigue; exhibit 23F, August 19, 2008, page 17, "it's unclear if she suffers from multiple sclerosis" as the diagnosis and old optic neuropathy. Dr. Matthews in exhibit 12F, p.2, "patient stable, no evidence of MS exacerbations per patient"; in exhibit 18F, Dr. Graham, "patient exercises regularly"; exhibit 22F, Dr. Hughes, entry August 22, 2012, "patient believes health is stable." Dr. Weinstock in exhibit 7F, entry April 8, 2009, page 21, "exam and neuro exam WNL, motor abilities WNL, October 1, 2008, page 23, "patient strong in all extremities."

[Tr. 41-42].

With respect to Dr. Cieri's opinion, the ALJ stated, "[p]er the Appeals Council remand, the undersigned considered Dr. Cieri's opinion in exhibit 20F. He doesn't provide a residual functional capacity assessment but rather states that the claimant has mild optic atrophy. Therefore, little weight is given to his opinion." [Tr. 41].

The Court finds that the ALJ erred in failing to provide a comprehensive evaluation of the treating physicians' opinions and failing to develop the record to clarify the opinions about what Ms. Daumen could still do despite her impairments in accordance with the Appeals Council's remand order. [Tr. 139-40].

13

On remand, the ALJ found that Dr. Weinstock-Guttman's "medical source statement was [completed] almost one year after the claimant's date last insured, therefore little weight is given to this opinion." [Tr. 140]. The Court finds that the Appeals Council's remand order required further action by the ALJ. First, although the Functional Capacity Assessment was dated after the date last insured, a review of the single page Functional Capacity Assessment form clearly indicates that the time period covered by the assessment was from February 1, 2008 through the present, representing the entire treatment relationship and period of disability. [Tr. 770]. The Appeals Council provided clear direction to the ALJ that he should not only "explain the weight given to such opinion evidence" but "may request the treating source to provide additional evidence and/or further clarification of the opinion and medical source statement about what the claimant could still do despite the impairment through September 30, 2012 (20 CFR. 404.1512)." [Tr. 140]. The ALJ is further directed to the Appeals Council's remand order stating that, "[t]he Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's treating source." Id. On remand, the ALJ will request that Dr. Weinstock-Guttman provide "additional evidence and/or clarification" of her medical opinion and provide a medical source statement for the

14

relevant disability period, in a format that will best address plaintiff's functional capacity. [Tr. 140].

The ALJ is further directed to Dr. Weinstock-Guttman's treatment notes dated December 8, 2010, stating,

> As you know, there has been ongoing discussion in regard to the etiology of her illnesses. Clearly she has antiphospholipid antibody syndromes and suffered several strokes. These have affected her cognition as well as the strength in her face, chronic fatigue, headaches, and what is most aggravating to her is the fact that she has significant problems with word finding and cannot function up to the level that she is accustomed to functioning at. She has been trying to find a job and nobody is willing to take on a woman of her age with the limitations that she experience, though they are very subtle and are complicated by the fact that she needs medical follow-up on a regular basis. <u>In the past, Dr. Benedict has clearly supported any medical disability</u>, but Cheryl did not want to give up and really wants to work. She needs to supplement the family income. She has tried very hard and is at the point where she is very tired and frustrated and I believe it is time for her to receive the disability that she clearly has been fighting for years.

[Tr. 427 (emphasis added)]. This treatment note is well within the disability period under review. Dr. Weinstock-Guttman also stated that she planned to refer plaintiff "back to Dr. Ralph Benedict for reevaluation in regard to her neuropsychological state and vocational plans. I do not feel as though she is capable of sustainable employment at this point in time and should consider applying for social security disability." [Tr. 429]. The record contains two evaluations from Dr. Benedict, Neuropsychological Consultant, dated March 20, 2006 [Tr. 378-82;

15

392-96] and June 30, 2008 [Tr. 383-87; 388-91].[4] Neither of these evaluations contain a finding by Dr. Benedict of disability. However, Dr. Weinstock-Guttman references that "Dr. Benedict has clearly supported any medical disability" and referred plaintiff for another "reevaluation in regard to her neuropsychological state and vocational plans." [Tr. 427, 429]. On remand, the ALJ, or plaintiff's advocate, will contact Dr. Benedict and inquire if there are additional evaluations that are not part of the record.

For the reasons stated above, the ALJ is also directed on remand to request that Dr. Cieri provide an assessment of plaintiff's functional limitations as it relates to her vision impairment for the relevant disability period.[5] The Court agrees with plaintiff, that the ALJ's rejection of Dr. Cieri's treating opinion because there is no function-by-function assessment "should have prompted the ALJ to develop the record." [Doc. #18 at 20]. The functional assessment form completed by Dr. Cieri is not an optimal format for communicating visual impairments and

---

[4] The short note dated July 21, 2018, was for a neuropsychological follow-up to discuss the evaluation conducted on June 30, 2008. [Tr. 382, 397].
[5] The Court also notes that Dr. Cieri's July 16, 2013 Functional Capacity Assessment was also completed outside the disability period. Similar to Dr. Weinstock-Gutman, Dr. Cieri clearly indicates that the time period covered by the assessment was from February 1, 2008 through the present, representing the entire treatment relationship and period of disability. [Tr. 752].

16

is better suited to other physical limitations such as lifting, standing, walking and sitting and a claimant's capacity during a typical eight-hour workday. [Tr. 752]. As courts in our Circuit have previously observed, "'it is unreasonable to expect a physician to make, on his own accord, the detailed functional assessment demanded by the Act in support of a patient seeking SSI benefits.'" Swanson v. Colvin, No. 12-CV-645S, 2013 WL 5676028, at *5 (W.D.N.Y. Oct. 17, 2013)(quoting Ubiles v. Astrue, No. 11-CV-6340T(MAT), 2012 WL 2572772, at *9 (W.D.N.Y. July 2, 2012)). Here, the ALJ rejected Dr. Cieri's functional assessment addressing plaintiff's visual capabilities and took no further steps to contact the doctor as directed by the Appeals Council. Rather than develop the record, the ALJ rejected the doctor's opinion and concluded that the plaintiff had "mild optic atrophy." [Tr. 41]. If the ALJ finds that the "Treating Physician's Functional Capacity Assessment" form is inadequate to address visual limitations, the duty to develop the record is triggered and further information should be sought in an appropriate format. Pursuant to the Appeals Council's remand order, the ALJ will "request [that Dr. Cieri] provide additional evidence and/or further clarification of the opinion...about what the claimant could still do despite the impairment through September 30, 2012 (20 C.F.R. 404.1512)." [Tr. 140].

Finally, on remand the ALJ will also request that Dr. Weinstein-Guttman provide an opinion regarding plaintiff's visual limitations. There are several references in the doctor's treatment records to monitoring her vision and plaintiff has been examined by a Neuro-Opthalmologist, Dr. Norah Lincoff, a member of Dr. Weinstein-Guttman's practice group. [See, e.g., Tr. 421 ("Since March of 2011 she has had increasingly worse vision"); 425 ("blurred vision"), 428 (same); 437 ("event of optic neuropathy"); 442-44 (Dr. Lincoff noting old optic neuropathy, new cellophane maculopathy, "square wave jerks of both eyes, likely causing trouble maintaining focus. Can be seen with ischemic disease to the cerebellar pathways. Can also commonly be seen in multiple sclerosis."); 448; 450, 452-54 (Neurologic Consultation Report sent to Dr. Lincoff); 884 ("noting vision disturbance"); 893 (same); 938 (same); 942].

Accordingly, the Court finds that a remand of this case to the ALJ is appropriate due to the ALJ's failure to comprehensively evaluate the treating source opinions and develop the record in compliance with the Appeals Council's February 13, 2015 Remand Order. See Cabibi v. Colvin, 50 F. Supp. 3d 213, 231 (W.D.N.Y 2014)(citing cases).

## VI. CONCLUSION

For the reasons stated, plaintiff's Motion for Judgment on the Pleadings **[Doc. #10]** is **GRANTED**. Defendant's Motion for

18

Judgment on the Pleadings **[Doc. #12]** is **DENIED**. This case is **REMANDED** for further proceedings consistent with this opinion, pursuant to sentence six of 42 U.S.C. §405(g). See Mikol, 554 F. Supp. 2d at 505; 42 U.S.C. §405(g).

In light of the Court's findings above, it need not reach the merits of plaintiff's remaining arguments. Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this opinion. On remand, the Commissioner shall address the other claims of error not discussed herein.

This is not a Recommended Ruling. The parties consented to proceed before a United States Magistrate Judge [doc. #20] on September 25, 2018, with appeal to the Court of Appeals. Fed. R. Civ. P. 73(b)-(c).

SO ORDERED at Bridgeport, Connecticut this 5th day of December 2018.

/s/
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE